Bernard L. ALPERT, Regional Director of the First Region of the National Labor Relations Board, for and on Behalf of the **NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**INTERNATIONAL HOD CARRIERS, BUILDING AND COMMON LABORERS' UNION, LOCAL 271, Respondent.**

**Civ. A. No. 3366.**

United States District Court
D. Rhode Island.
Nov. 2, 1964.

Paul F. Dwyer, N. L. R. B., Boston,. Mass., for petitioner.

Arthur J. Flamm, Boston, Mass., Raymond Coia, Providence, R. I., for respondent.

DAY, District Judge.

This is a petition by the Regional Director of the First Region of the National Labor Relations Board (hereinafter called the Board) filed pursuant to section 10(*l*) of the National Labor Relations Act, as amended, 29 U.S.C.A. § 160 (*l*) to enjoin the respondent Local 271, International Hod Carriers, Building and Common Laborers Union from engaging in unfair labor practices within the meaning of Section 8(b) (4) (i), subparagraph (D) of said Act pending final disposition of a charge filed against it by Gilbane Building Co. (hereinafter called Gilbane). In this charge, Gilbane Building Co. alleges that said respondent is engaged and has been engaged in acts and conduct in violation of said Section 8(b) (4) (i), sub-paragraph (D).[1]

The evidence presented by the petitioner during the hearing on the instant petition established the following facts: Gilbane is a general contractor engaged in the building and construction industry with its principal place of business in Providence, Rhode Island. In the course of its operations, Gilbane annually performs services outside the State of Rhode Island valued at more than $50,000. During the period herein involved, Gilbane has been engaged as a general contractor in the construction of a housing complex, so-called, at the University of Rhode Island at West Kingston, Rhode Island. In connection with this construction Gilbane has been operating a casting yard, so-called, at a location approximately three miles from said housing complex, for the fabrication of precast concrete wall panels which upon completion will be transported to and erected at said housing complex.

One of the steps in the manufacture or fabrication of these concrete panels required that they be removed from the moulds in which they are made and hoisted by power to storage racks located nearby in the casting yard. This work consisted of hooking a cable from a crane through an eye in each of the panels and signaling the crane operator to lift such panel and place it on said storage racks.

The precasting of said panels began on August 24, 1964. In July, 1964, respondent demanded that the work described in the preceding paragraph be assigned by Gilbane to its employees who were members of or represented by it. It claimed, and now claims, that under the provisions of its contract with Associated General Contractors of America, Inc., dated May 21, 1964, which governs its relationships with Gilbane said work was assigned to the employees of Gilbane who are members of or are represented by it. Representatives of Local 37, International Association of Bridge, Structural and Ornamental Ironworkers (hereinafter called Ironworkers) during the same period made a similar demand upon Gilbane, claiming that under "customs and practice" of the past in this area said work had always been performed by its members. Both unions rejected Gilbane's offer to divide said work equally between employees who were members of or represented by each of them.

---

1. "8(b) It shall be an unfair labor practice for a labor organization or its agents—
  \* \* \* \* \*
  "4(i) to engage in, or to induce or encourage any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services \* \* \* where \* \* \* an object thereof is—

  \* \* \* \* \*
  "(D) forcing or requiring any employer to assign particular work to employees in a particular labor organization or in a particular trade, craft, or class rather than to employees in another labor organization or in another trade, craft, or class, unless such employer is failing to conform to an order or certification of the Board determining the bargaining representative for employees performing such work."

Said work of removing and placing said concrete panels on said storage racks began on September 16, 1964. It was performed by two ironworkers and one laborer and continued for four days through Friday, September 19, 1964. On the following Monday, September 21, 1964, laborers employed at said casting yard reported as usual for work but were told by a union steward of the respondent to report at the headquarters of the respondent for a meeting. Thereupon they left said premises and have not returned to their jobs. Similarly, other members of respondent who were employed at the construction site of said housing complex, after reporting for work on the morning of September 21, 1964, left their jobs at the suggestion of said steward ostensibly to attend such meeting and have never returned. Subsequent efforts by Gilbane to recruit a labor force by application to the respondent have been unsuccessful.

The respondent contends that it is not and has not engaged in any unfair labor practice because its members are entitled to the disputed work under its aforesaid contract with Associated General Contractors of America, Inc. In support of this contention it relies upon a letter dated December 11, 1959, signed by the executive secretary of said Associated General Contractors, Inc., which is incorporated by reference in said contract. It reads as follows:

"To Whom It May Concern:
It has been the practice for many years in the State of Rhode Island to employ Laborers in the loading and unloading of lumber, stone, precast concrete slabs and precast concrete wall panels where power equipment is used in handling these items and in addition, Laborers have been employed in the signaling where power equipment is used in the loading and unloading of the foregoing items."

In my opinion, the contents of the foregoing letter are far from clear and unambiguous and can hardly be said to be a clear assignment of said disputed work to members of the respondent, especially when viewed in connection with the claim of the Ironworkers that said disputed work performed in the process of the manufacture of said panels has always been performed in this area by its members.

Section 8(b) (4) (i) (D) of said Act prohibits all strike conduct, or inducement of such, when its objective is to force an employer to assign particular work to employees in a particular labor organization rather than to employees in another labor organization unless such employer is failing to conform to an order or certification of said Board determining the bargaining representative for employees performing such work. It is designed to protect commerce from disruption over jurisdictional claims of a labor organization to work which has already been assigned to another labor organization. The only exemption specified in the Act is when an employer is failing to adhere to a Board Order or certification covering the work in dispute. No such order or certification has ever been issued by the Board under which the respondent can properly claim said disputed work for its members.

Under the circumstances existing here, the issue of whether members of the respondent are entitled to the disputed work is a matter which it is the function of the Board ultimately to determine. Douds v. International Longshoremen's Ass'n, 1957, 2 Cir., 242 F.2d 808.

■ To entitle the petitioner to the relief which it seeks in this proceeding, it is not required to prove by a fair preponderance of the evidence that the charge made against respondent by Gilbane is true. It need only establish by a fair preponderance of the evidence that there was basis for the Board's finding that it has "reasonable cause to believe" that the charge filed by Gilbane is true. Local 346, International Leather Goods Union, AFL–CIO et al. v. Compton, 1961, 1 Cir., 292 F.2d 313; Madden v. International Organization of Masters, Mates and Pilots of America, Inc. et al., 1958, 7 Cir., 259 F.2d 312. Douds v. In-

ternational Longshoremen's Ass'n, supra.

In my opinion, the evidence and the reasonable inferences to be drawn from it clearly establish that said Board has reasonable cause to believe that the respondent has, and is engaged in unfair labor practices, in violation of said Section 8(b) (4) (i) (D) of said Act. In view of this finding by me, in order to preserve the issue for an orderly determination by the Board, as provided in said Act, it is appropriate, just and proper that pending the final disposition of said charge by said Board, the respondent Local 271, its officers, representatives, agents, servants, employees, attorneys, and all members acting in concert or participation with them be enjoined and restrained from the commission, continuation or repetition of any acts and conduct in violation of said section 8(b) (4) (i) (D) of said Act.

Petitioner will prepare and present for entry an appropriate order in accordance with the findings and conclusions hereinbefore set forth.